UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MURRAY COHEN, HELEN COHEN and
MURRAY J. COHEN P.A.,

                         Plaintiffs,

             -against-                            15-CV-3825 (SJF)(AYS)

ROBERT POTENZA, LEONARD KREINCES,           **OPINION and ORDER**
HOWARD SCOTT ROSENBERG and
KREINCES & ROSENBERG P.C.,

                        Defendants.
-----------------------------------------------------------------X
FEUERSTEIN, District Judge:

      On or about June 30, 2015, plaintiffs Murray Cohen, Helen Cohen and Murray J. Cohen

P.A. ("MJCPA") (collectively, "plaintiffs") commenced this action against defendants Robert

Potenza ("Potenza"), Leonard Kreinces ("Kreinces"), Howard Scott Rosenberg ("Rosenberg")

and Kreinces & Rosenberg P.C. ("the Firm") (collectively, "defendants"), alleging violations of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and Sections 349

and 349-c of the New York General Business Law ("NYGBL").  Pending before the Court are:

(1) defendants' motion, *inter alia*, (a) for summary judgment dismissing plaintiffs' claims in

their entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure[1], and (b) for an award

---

[1] Defendants initially moved, *inter alia*, to dismiss plaintiffs' claims in their entirety pursuant to
Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  However, during an initial
pretrial conference held on November 18, 2015, the Court, *inter alia*, notified the parties that the
motion would be treated as one for summary judgment under Rule 56 of the Federal Rules of
Civil Procedure; gave plaintiffs the opportunity to present any supplemental materials pertinent
to the motion until December 2, 2015; and gave defendants the opportunity to submit a response
to plaintiffs' supplemental materials, and to present any additional supplemental materials, until
December 16, 2015.  *See* Fed. R. Civ. P. 12(d).  Thereafter, plaintiffs filed their cross motion for

of attorney's fees and costs pursuant to 15 U.S.C. § 1692k(A)(3); and (2) plaintiffs' cross motion

(a) for partial summary judgment on their FDCPA claims against Kreinces, Rosenberg and the

Firm (collectively, "the K&R defendants") pursuant to Rule 56 of the Federal Rules of Civil

Procedure, (b) for attorney's fees and costs, and (c) for leave to amend the complaint pursuant to

Rule 15(b) of the Federal Rules of Civil Procedure to assert additional state law claims against

Potenza and/or to "transfer venue of the proceedings to the Florida State Courts[.]" (Plaintiffs'

Notice of Cross Motion for Partial Summary Judgment at 2). For the reasons set forth below,

defendants' motion is granted in part and denied in part and plaintiffs' cross motion is denied.


I.      BACKGROUND

        A.      Factual Background[2]

        Murray and Helen Cohen are husband and wife and are residents of the State of Florida.

(Plaintiffs' Rule 56.1 Statement ["Plf. 56.1 Stat."], ¶¶ 1-2). At the time this action was

commenced, Murray Cohen was eighty-eight (88) years old and Helen Cohen was seventy (70)

years old. (Complaint ["Compl."], ¶¶ 1-2). MJCPA is a Florida corporation. (Plf. 56.1 Stat., ¶

3; Defendants' Response to Plaintiffs' Rule 56.1 Statement and Rule 56.1 Counter-Statement of

Undisputed Facts ["Def. 56.1 Stat."], ¶ 3).

        Potenza is a resident of the State of New York. (Plf. 56.1 Stat., ¶ 5; Def. 56.1 Stat., ¶ 5).

Kreinces and Rosenberg are attorneys licensed to practice in the State of New York, who conduct

business in the State of New York. (Plf. 56.1 Stat., ¶¶ 6-7; Def. 56.1 Stat., ¶¶ 6-7). The Firm is a

_____

partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

[2] The following facts are not in dispute unless otherwise indicated.

professional corporation organized and existing under the laws of the State of New York. (Plf. 56.1 Stat., ¶ 8; Def. 56.1 Stat., ¶ 8).

On or about October 1, 1985, Mr. Cohen borrowed ten thousand dollars ($10,000.00) from Potenza and signed a promissory note indicating that he would repay the loan by December 1, 1985 ("the 1985 Loan"). (Affidavit of Murray Cohen in Opposition ["Cohen Aff."], ¶ 11 and Ex. 1; Affidavit of Leonard Kreinces, Esq., dated December 10, 2015 ["Kreinces Aff."], Ex. 1 at 3-4). Although Potenza contends that Mr. Cohen never paid the amount due him under the 1985 Loan, (Affidavit of Robert Potenza dated September 30, 2015 ["Potenza Aff."] Potenza Aff., ¶ 10; Kreinces Aff., Ex. 1 at 4), Mr. Cohen avers that he "recall[s] making repayments from [his] personal funds and that this loan was paid in full." (Cohen Aff., ¶ 11). However, in support of his assertion, Mr. Cohen submits only two (2) personal checks ("the 1992 Checks"): the first check, dated March 22, 1992, is made payable to "Cash Management," with the letters "ML" written above that name, in the amount of one thousand eight hundred fifty dollars ($1,850.00), and is endorsed on the back "For Deposit Only To MLPF&S, Inc.;" and the second check, dated June 10, 1992, is made payable to "Cash" in the amount of two thousand seven hundred dollars ($2,700.00), and contains no endorsements on the back.[3] (Cohen Aff., Ex. 2). Not only are neither of those checks payable to Potenza, they amount to only four thousand five hundred and

---

[3] During an inquest in state court, as set forth more fully below, Potenza testified, in relevant part: (1) that Mr. Cohen gave him the 1992 Checks and asked him to cash them for him, (Kreinces Aff., Ex. 1 at 7); (2) that after Mr. Cohen gave him the first check, he gave Mr. Cohen money, (*id.* at 8); (3) that when he deposited the first check to his "cash management account in Merrill Lynch," (*id.*), "[i]t came back unpaid," (*id.* at 7); and (4) that he also gave Mr. Cohen "cash for the face amount of" the second check, (*id.* at 9), but he never deposited that check because "Mr. Cohen asked [him] not to because he said that he was changing his account or something, his bank, and he was gonna [sic] give [him] another check to replace that [one]." (*Id.*)

fifty dollars ($4,550.00).

Mr. Cohen also borrowed money from Potenza on four (4) occasions in 1992 and signed promissory notes indicating that he would repay the loans by certain dates ("the 1992 Loans"). (Kreinces Aff., Ex. 1 at 5-7, 11). Potenza contends that Mr. Cohen and MCA never paid him the amounts due under the 1992 Loans despite his demand therefor. (Potenza Aff., ¶ 10; Kreinces Aff., Ex. 1 at 6-7). Mr. Cohen does not dispute, or otherwise address, Potenza's assertions regarding the 1992 Loans.

According to Potenza, at the time he made the 1985 and 1992 loans, "Mr. Cohen and MCA had been [his] accountants for approximately twenty years[,]" (Potenza Aff., ¶ 5); the transactions were "business loans to Mr. Cohen and his prior accounting firm, Murray Cohen Associates ('MCA'). . . ," (*id.*, ¶ 4); and the loans "were made for business purposes in connection with certain enterprises in which Mr. Cohen had been engaged during the five to seven years prior to their issuance, including but not limited to restaurants in Florida in which Mr. Cohen had an interest, and Mr. Cohen's accounting firm, MCA, both of which, according to Mr. Cohen, were suffering a negative cash flow and needed an influx of capital." (*Id.*, ¶ 6). As noted above, Mr. Cohen does not address the 1992 Loans at all, but contends with respect to the 1985 Loan that he "used all the[] monies [Potenza 'personally lent' him] for [his] personal purposes, including furnishings for [his] home in Florida, and the like." (Cohen Aff., ¶ 10).

In or about 1994, Potenza commenced an action in the Supreme Court of the State of New York, County of Queens ("the New York state court") against Mr. Cohen and MCA, *Potenza v. Cohen*, Index No. 9699/1994, to recover the amounts due and owing to him under the 1985 Loan and 1992 Loans. On April 17, 1995, upon Mr. Cohen's default in that action,

judgment was entered in favor of Potenza and against Mr. Cohen in the principal amount of seventy thousand two hundred thirteen dollars and ninety-three cents ($70,213.93) ("the Judgment")[4]. (Plf. 56.1 Stat., ¶ 10; Def. 56.1 Stat., ¶ 10). Mr. Cohen never sought to vacate the Judgment in the New York state court. (*See* Cohen Aff., ¶ 15).

On or about June 12, 2009, the New York state court rejected and returned the papers filed by Giamo Associates, LLP, formerly known as Giamo & Vreeburg LLP, on behalf of Potenza, seeking a renewal judgment pursuant to Section 5014(1) of the New York Civil Practice Law and Rules ("N.Y.C.P.L.R."). (Docket Entry ["DE"] 26, Attachment ["Attach."] 16)[5]. Since the date of entry of the Judgment, "no renewal judgment has . . . been obtained within the twenty year statutorily prescribed period, to wit April 16, 2015." (Plf. 56.1 Stat., ¶ 20; Def. 56.1 Stat., ¶ 20).

The Firm represented Potenza in post-judgment collection proceedings against Mr. Cohen in New York, (Plf. 56.1 Stat., ¶ 12; Def. 56.1 Stat., ¶ 12); and in a malpractice action against Potenza's former attorneys, Giamo & Vreeburg LLP, in the Supreme Court of the State of New York, Nassau County, Index No. 00946/2014. (Plf. 56.1 Stat., ¶ 13; Def. 56.1 Stat., ¶ 13). On or about March 11, 2015, *i.e.*, prior to the expiration of the twenty (20)-year period to seek enforcement of a money judgment provided by Section 211(b) of the New York Civil Practice

---

[4] Although Potenza commenced the New York state court action against both Mr. Cohen and MCA, he obtained the Judgment against only Mr. Cohen because Mr. Cohen no longer owned MCA and, thus, MCA was never served with process in that action. (*See* Kreinces Aff., Ex. 1 at 2).

[5] The exhibits referred to in the "Affirmation of Mark D. Gilwit, Esq. in Support of Plaintiffs' Cross-Motion for Summary Judgment and in Opposition to Motion-in-Chief" do not correspond with the exhibits filed on ECF. Accordingly, for ease of reference, the Court will cite to the documents submitted by plaintiffs in support of their cross motion as they are filed on ECF.

Law and Rules[6], (*see* Plf. 56.1 Stat., ¶ 20), the Firm, on behalf of Potenza, served a subpoena

duces tecum upon PNC Bank seeking the production of PNC's "file including but not limited to

the financial statement of Helen and Murray J. Cohen in connection" with a certain mortgage

loan. (DE 26, Attach. 17). The return date of the original subpoena was April 10, 2015, (*id.*),

also prior to the expiration of the applicable twenty (20)-year period. However, the caption of

the original subpoena served by the Firm upon PNC on or about March 11, 2015 erroneously

named Joseph O. Giaimo and Giaimo Associates, LLP as defendants. (*See* DE 26, Attach. 17).

On or about April 8, 2015, Ms. Cohen's attorney, Craig J. Gilwit, Esq., sent Kreinces a

letter providing, in relevant part:

> "We represent Helen Cohen. I write to request that you voluntarily withdraw the
> subpoena issued to PNC Mortgage compelling the production of her personal financial
> statements.
>
> As you know, Helen Cohen is a non-party to the underlying action in Queens County and
> has a right to privacy and protection with regard to her financial records. Likewise these
> records have no relevancy whatsoever to the disposed action.
>
> Therefore, we request that you withdraw your subpoena. . . ."

(DE 26, Attach. 17). On that same date, Ms. Cohen's counsel also filed an order to show cause

seeking, *inter alia*, to quash and vacate the original subpoena. (*Id.*)

Thereafter, on April 9, 2015, *i.e.*, prior to the expiration of the applicable twenty (20)-year

period, (*see* Plf. 56.1 Stat., ¶ 20), the Firm served an amended subpoena duces tecum upon PNC

---

[6] Section 211(b) of the N.Y.C.P.L.R. provides, in pertinent part, that "[a] money judgment is
presumed to be paid and satisfied after the expiration of twenty years from the time when the
party recovering it was first entitled to enforce it. This presumption is conclusive, except as
against a person who within the twenty years acknowledges an indebtedness, or makes a
payment, of all or part of the amount recovered by the judgment . . . . The presumption created by
this subdivision may be availed of under an allegation that the action was not commenced within
the time limited."

Bank correcting the caption to name Murray Cohen and MCA as defendants. (DE 26, Attach. 18; *see also* Plf. 56.1 Stat., ¶ 21; Def. 56.1 Stat., ¶ 21). The subpoena and amended subpoena did not restrain any of plaintiffs' accounts or freeze any of their funds. (Kreinces Aff., ¶ 14; DE 26, Attach. 18).

In addition, prior to the expiration of the applicable twenty (20)-year period, Potenza, by his Florida attorney, Marc S. Mucci, Esq., of the law firm Benson, Mucci & Weiss, P.L.,"domesticated the . . . Judgment in [t]he Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case #: 2015 CA 002894 under the Florida Enforcement of Foreign Judgments Act, Florida Statutes §§ 55.501-55.509 (FEFJA)." (Plf. 56.1 Stat., ¶¶ 31-32; Def. 56.1 Stat., ¶¶ 31-32). The domesticated judgment was secured by an affidavit prepared by Mr. Mucci and executed by Potenza, erroneously referencing the index number of the New York state court malpractice action as the case in which Potenza was a judgment creditor. (DE 26, Attach. 4). Since none of the attorneys at the Firm are admitted to practice law in the State of Florida, (Kreinces Aff., ¶ 11), the Firm had referred Potenza to Mr. Mucci to domesticate the Judgment and attempt to enforce it in that state. (*Id.*; *see also* Potenza Aff., ¶ 17).

On April 21, 2015, after the expiration of the twenty (20)-year period provided by N.Y. C.P.L.R. § 211(b), Ms. Cohen's counsel: (1) sent Kreinces a letter that is virtually identical to his April 8, 2015 letter, set forth above, with the exception that it also requested that he "voluntarily withdraw the subpoena issued on April 9, 2015," *i.e.*, the amended subpoena, (DE 26, Attach. 19); and (2) filed an order to show cause in the New York state court seeking, *inter alia*, to vacate and quash the amended subpoena duces tecum pursuant to Sections 211(b) and 2304 of the New York Civil Practice Law and Rules ("the Quash OTSC"). (DE 26, Attach. 19).

Kreinces served an affirmation in opposition to Ms. Cohen's Quash OTSC on or about

May 12, 2015, (DE 26, Attach. 20), contending, in relevant part:

> "Yes, it is true that twenty (20) years have gone by since the entry of that
> judgment, on April 17, 1995. However, the service here was effectuated several
> days before the expiration of the expiration of [sic] judgment and we respectfully
> submit the subpoenas are perfectly valid, especially in view of the
> acknowledgment of PNC Bank in connection with the subpoenas [*i.e.*, that it was
> in receipt of the original subpoena and was proceeding to collect the documents
> pursuant thereto, (*id.*, ¶ 3)]."

(*Id.*, ¶ 8).

Plaintiffs allege that on May 20, 2015, the return date of the Quash OTSC, Rosenberg

appeared in the New York state court and requested additional time to respond to the moving

papers. (Compl., ¶ 37). On or about June 4, 2015, Kreinces filed an affirmation ostensibly in

opposition to Ms. Cohen's first order to show cause seeking to vacate and quash the original

subpoena, (DE 26, Attach. 22), in which he contended, *inter alia*, that "[b]oth subpoenas were

served prior to the expiration of the twenty (20) year period for enforcement of judgments. We

believe that both motions should be denied as to Helen Cohen also since this is a post-judgment

proceeding." (*Id.*, ¶ 4).

Also in or about June 2015, Mr. Mucci, Potenza's Florida attorney, filed a writ of

garnishment and served it upon MJCPA. (Plf. 56.1 Stat., ¶¶ 35, 37; Def. 56.1 Stat., ¶¶ 35, 37;

DE 26, Attach. 5). In or about October 2015, Mr. Mucci, on behalf of Potenza, filed and served a

motion for default on the writ of garnishment. (Plf. 56.1 Stat., ¶ 39; Def. 56.1 Stat., ¶ 39; DE 26,

Attach. 9).

By short form order dated September 9, 2015, the New York state court, *inter alia*, denied

Ms. Cohen's Quash OTSC as moot, on the basis that the amended subpoena was no longer

viable, holding, in relevant part:

> "Under New York law, a money judgment is enforceable for a period of twenty years, after which a conclusive presumption of payment and satisfaction results, unless the debtor has acknowledged the debt or made a payment toward it . . . . Expiration of the twenty-year period acts as a bar to the maintenance of an existing cause of action. The presumption of payment renders the cause of action non-existent . . . . As CPLR 211(b) is not a statute of limitations, but a rule of law, it cannot be extended or rebutted by any means other than those specifically set forth . . . .
>
> In the case at bar, there having been no evidence presented of an acknowledgment of the indebtedness or partial payment, and the parties hereto being in accord that the twenty-year period expired on or about April 17, 2015, the judgment was, at that time, presumed to be paid and satisfied. There was no longer an action pending in which to act upon a subpoena or to intervene. Consequently, [Potenza's] subpoenas were, at that time, null and void, and nonparty, Helen Cohen's proposed intervention was, at that time, an impossibility."

(Declaration of Matthew J. Bizzaro, Esq. ["Bizzaro Decl."], Ex. 2) (quotations and citations omitted).

### B.     Procedural History

On or about June 30, 2015, plaintiffs commenced this action against defendants alleging violations of the FDCPA and the NYGBL. Specifically, plaintiffs allege, *inter alia*, (1) that "[d]efendants' consistent and willful failure to investigate or correct the erroneous restraint [sic], despite having been notified on multiple occasions by different parties about the error, constituted violations of § 1692d and § 1692f [of the FDCPA] [and] [p]laintiffs should not have had to retain counsel in order for defendant [sic] to fix the error[,]" (Compl., ¶ 46) (first claim for relief); (2) that "[d]efendants singly and jointly falsely represented the character and legal status of the debt by employing enforcement and collection devises [sic] after the expiration of the

applicable statute of limitations of the [J]udgment in question[,]" (*id.*, ¶ 50), and failed to inform Ms. Cohen, MJCPA, PNC Bank, the New York state court, the Florida state court, or any "other garnishee or party, that the [J]udgment which they were seeking to inforce [sic] was legally of no force or effect[,]" (*id.*, ¶ 51), in violation of 15 U.S.C. §§ 1692e(2)(A) and (10) (second claim for relief); (3) that defendants "willfully and knowingly violated § 349 of the [NYGBL] when they continued to move to enforce and collect upon an expired judgment; when they did so in relation to non-judgment debtors; when they failed or refused to withdraw its collection actions despite due demand; when they opposed plaintiffs' motions to quash; when they persisted in promulgating a writ of garnishment in Florida and as otherwise ascertained in discovery hereinafter[,]" (*id.*, ¶ 55), (third claim for relief); and (4) that defendants "violated § 349-c of the [NYGBL] by: using deceptive acts and practices directed against persons known to be elderly, by willfully disregarding the rights of the elderly[,] causing a severe and substantial loss of plaintiffs' pensions and Social Security payments[,] and thereby causing plaintiffs to suffer physical, emotional, and economic damage[,]" (*id.*, ¶ 58), (fourth claim for relief).  Plaintiffs' seek, *inter alia*, (1) actual and statutory damages on their FDCPA claims; (2) treble damages, costs and attorney's fees on their claim under § 349 of the NYGBL; (3) "a civil penalty not to exceed $10,000.00" on their claim under § 349-c of the NYGBL; (4) judgment declaring "null and void the Queens Judgment and the resultant Florida domesticated Judgment," (*id.*, ¶ 56) and "that the PNC bank subpoena is of no force or effect[,] that the Writ of Garnishment issued in the Florida matter is null and void[,] that the Queens Judgment was issued more than twenty years ago and has never been extended and is [sic] therefore no longer has any force or effect[,] [and] that the Domesticated Florida judgment is similarly of no force or effect as it emanates from the

Queens Judgment[,]" (*id.*, ¶ 61), (fifth cause of action); and (5) injunctive relief "barring

[d]efendants from engaging in the[] deceptive acts and practices [alleged under the NYGBL],"

(*id.*, ¶ 56), permanently enjoining defendants "from taking any steps in relation to either the

Queens Judgment or the Domesticated Florida Judgment[,]" (*id.*, ¶ 61), and enjoining defendants

"from committing similar violations in the future[.]" (*Id.* at 12).

Defendants now move, *inter alia*, for summary judgment dismissing plaintiffs' claims in

their entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure and for an award of

attorney's fees and costs pursuant to 15 U.S.C. § 1692k(A)(3), and plaintiffs cross-move for

partial summary judgment on their FDCPA claims against the K&R defendants pursuant to Rule

56 of the Federal Rules of Civil Procedure; for attorney's fees and costs; and for leave to amend

the complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to assert additional

state law claims against Potenza and/or to "transfer venue of the proceedings to the Florida State

Courts[.]" (Plaintiffs' Notice of Cross Motion for Partial Summary Judgment at 2).


II.    DISCUSSION

A.    Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law.'" *Zaretsky v. William*

*Goldberg Diamond Corp.*, 820 F.3d 513, 519 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).  In

ruling on a summary judgment motion, the district court must first "determine whether there is a

genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet*

*Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see Ricci v.*

*DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted)); *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 142 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 949, 190 L. Ed. 2d 830 (2015) ("The role of the court on a summary judgment motion is to determine whether, as to any material issue, a genuine factual dispute exists." (quotations and citation omitted)). On a motion for summary judgment, "[a] fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015), *cert. denied*, 2016 WL 1756072 (Oct. 3, 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the nonmoving party," *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quotations and citation omitted), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quotations and citation omitted); *accord Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dalberth*, 766 F.3d at 182 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505); *see also Apotex*, 823 F.3d at 59. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677 (quoting *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "[W]hen the moving party has carried its burden. . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, New York*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Fabrikant*, 691 F.3d at 205 ("[C]onclusory statements or mere allegations will not suffice to defeat a summary judgment motion." (quotations and citation omitted)).

Where, as here, both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the

party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *accord Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 174 (2d Cir. 2014).

B.      FDCPA Claims[7]

"To state a claim under the FDCPA, a plaintiff must satisfy the following threshold requirements: (1) the plaintiff must be a 'consumer,' (2) the defendant must be a 'debt collector,' and (3) the defendant must have committed some act or omission in violation of the FDCPA." *Abramov v. I.C. Sys., Inc.*, 54 F. Supp. 3d 270, 272-73 (E.D.N.Y. 2014) (quotations, alterations and citation omitted); *accord Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015); *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 154 (S.D.N.Y. 2015).

1.      Claims of MJCPA

The FDCPA defines the term "consumer" to mean "any *natural person* obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added). Since only a

---

[7] Although plaintiffs concede "that they cannot establish FDCPA claims against former judgment creditor Potenza, as he is not a debt collector under the definition of the statute[,]" (Plaintiffs' Memorandum of Law in Support of Cross-Motion and in Further Opposition to the Motion in Chief ["Plf. Cross Motion Mem."] at 4-5); indicate that they are "willing to withdraw the FDCPA claims against Potenza without prejudice- as [they] cannot at this time establish that he is a [debt collector within the meaning of the FDCPA]," (*id.* at 9); and request that the Court "discontinu[e] . . . the FDCPA claim made against Potenza," (*id.* at 10; *see also id.* at 18); for the reasons set forth below, plaintiffs' FDCPA claims (first and second claims for relief) against Potenza are dismissed in their entirety with prejudice.

"natural person" may be a "consumer" under the FDCPA, MJCPA, a corporation, (Plf. 56.1 Stat., ¶ 3; Def. 56.1 Stat., ¶ 3), cannot establish a claim under the FDCPA as a matter of law. *Cf. Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) ("In *Mohamad v. Palestinian Authority*, — U.S. —, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012), the [Supreme] Court held that the TVPA [Torture Victim Protection Act of 1991, 28 U.S.C. § 1350] 'authorizes liability solely against natural persons,' *id.* at 1708, and 'does not impose liability against organizations,' including corporations, *id.* at 1705."); *Consolidated Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 346-47 (2d Cir. 2002) ("Although a corporation is an artificial being, invisible, intangible, and existing only in contemplation of law, . . . a wide variety of constitutional rights may be asserted by corporations. . . . Nevertheless, not all constitutional protections apply to corporations or apply as fully as they do to natural persons." (quotations and citations omitted)). Accordingly, the branch of defendants' motion seeking judgment dismissing MJCPA's FDCPA claims pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and defendants are granted judgment as a matter of law dismissing the FDCPA claims (first and second claims for relief) asserted against them on behalf of MJCPA in this action.

### 2. Violation of the FDCPA

"In passing the FDCPA, Congress aimed 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 223 (2d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "Consequently, the first question in any

claim brought under the FDCPA is whether the allegedly violative [sic] conduct was used in an attempt to collect a 'debt' within the meaning of the FDCPA." *Beal v. Himmel & Bernstein, LLP*, 615 F. Supp. 2d 214, 216 (S.D.N.Y. 2009).

The FDCPA defines the term "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Although the statute does not define the term "transaction," "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value.'" *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (quotations and citation omitted); *accord Beauvoir v. Israel*, 794 F.3d 244, 247 (2d Cir. 2015); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 170 (2d Cir. 2015). Thus, when the obligation or alleged obligation to pay money does not "arise[] as a result of the rendition of a service or purchase of property or other item of value," it does not constitute a 'debt' for purposes of the FDCPA. *Beauvoir*, 794 F.3d at 247-48 (quoting *Beggs*, 145 F.3d at 512); *see also Polanco*, 930 F. Supp. 2d at 550 ("The FDCPA applies only to conduct in connection with the collection of a consumer debt."); *Orenbuch v. Leopold, Gross & Sommers, P.C.*, 586 F. Supp. 2d 105, 107-08 (E.D.N.Y. 2008) (dismissing the plaintiff's FDCPA claim because "there was no consumer transaction that gave rise to the debt.") "What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Beauvoir*, 794 F.3d at 248 (quotations and citation omitted); *see also Eades*, 799 F.3d at 170 ("In determining whether an obligation is a 'debt' under the FDCPA, the relevant consideration is whether the obligation arose out of a transaction

16

of the type specified in the FDCPA[.]"); *Polanco*, 930 F. Supp. 2d at 551 ("[T]he FDCPA is triggered when the obligation is a debt arising out of a consumer transaction. . . . What is dispositive in determining the applicability of the FDCPA is not the form of the obligation but whether the debt, regardless of form, arose from a consumer transaction.") "[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n. 1 (2d Cir. 2006); *see also Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 103 (2d Cir. Feb. 11, 2016) (summary order) ("The FDCPA does not cover actions arising out of commercial debts." (quotations and citation omitted)); *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 444 (S.D.N.Y. 2014) ("Because only transactions for 'personal, family, or household purposes' are covered, actions arising out of 'commercial debts' are excluded.")

"To determine whether a particular debt is commercial or personal in nature, courts examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended[.]" *Anderson v. Granoff, Walker & Forlenza, P.C.*, No. 11-cv-4178, 2012 WL 1066801, at * 3 (S.D.N.Y. Mar. 27, 2012), *reconsideration denied*, 2012 WL 1659186 (S.D.N.Y. May 9, 2012) (quotations and citation omitted); *accord Scarola Malone & Zubatov LLP v. Verizon Commc'ns, Inc.*, No. 14-cv-4518, 2015 WL 3884211, at * 4 (S.D.N.Y. June 24, 2015), *aff'd*, 638 F. App'x 100 (2d Cir. Feb. 11, 2016).  While plaintiffs did not allege any information about the nature of the debt in their complaint, Potenza specifically asserts that the debt in question was commercial in nature, *i.e.*, that the 1984 Loan and 1992 Loans underlying the Judgment were made for business purposes, (Potenza Aff., ¶¶ 4, 6), *i.e.*, "in connection with certain enterprises in which Mr. Cohen had been engaged . . . which, according to Mr. Cohen,

were suffering a negative cash flow and needed an influx of capital." (*Id.*, ¶ 6). Accordingly, defendants satisfied their initial burden of demonstrating that there is no genuine dispute as to any material fact with respect to the nature of the underlying debt and that they are entitled to judgment as a matter of law dismissing plaintiffs' FDCPA claims against them because the conduct of which plaintiffs complain was not taken in an attempt to collect a "debt" within the meaning of the FDCPA. *See, e.g. Green-Stevenson v. Bank of America, N.A.*, No. 13-cv-2408, 2014 WL 11474837, at * 1 (E.D.N.Y. Jan. 15, 2014), *aff'd*, 597 F. App'x 4 (2d Cir. Jan. 13, 2015) (holding that the plaintiff's FDCPA claims failed because, *inter alia*, the loans were incurred for business purposes).

In opposition to defendants' motion, plaintiffs do not address the nature of the 1992 Loans at all, and do not actually dispute that the 1985 Loan was made for business purposes. Rather, Mr. Cohen merely contends, for the first time, that he used the money that Potenza "personally lent" him in 1985 for his "personal purposes, including furnishings for [his] home in Florida, and the like." (Cohen Aff., ¶ ). At most, plaintiffs' evidence establishes only that the proceeds from the 1985 Loan were, "at some point, used for non-business purposes[;]" not that the loan "transaction[s] as a whole [were] personal in nature." *Valcin v. Prestige Dirs., LLC*, No. 15-cv-4295, 2015 WL 12670378, at * 4 (E.D.N.Y. Dec. 7, 2015); *see also Hardy v. Northern Leasing Sys., Inc.*, 953 F. Supp. 2d 150, 160 (D.D.C. 2013) (finding that the plaintiff's unsupported assertion that the property was used for his personal use only was insufficient to state a claim under the FDCPA). Since plaintiffs' have failed to adduce sufficient evidence on which a reasonable jury could find in their favor with respect to the nature of the underlying debt, there is no genuine dispute of material fact for trial with respect to their FDCPA claims.

Moreover, contrary to plaintiffs' contention, the nature of the debt was never litigated in the New York state court. Indeed, the fact that Potenza commenced the action in the New York state court against both Mr. Cohen and his company, MCA, supports his assertion that the loans were made for business, not consumer, purposes. The fact that Potenza, in attempting to collect the debt owed to him, obtained the Judgment against only Mr. Cohen individually because he no longer owned MCA at that time does not affect the nature of the debt. *See generally Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012) (holding that "the relevant point in time for determining the character of the obligation [under the FDCPA] is when the loan is made, rather than when collection efforts begin."); *Miller v. McCalla, Paymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872, 874-75 (7th Cir. 2000) (holding that the relevant time for determining the nature of the debt for purposes of the FDCPA is "when the loan is made, not when collection is attempted. . . . The Act regulates the debt collection tactics employed against personal borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods. . . . Businessmen don't need the warnings. A businessman who converts a business purchase [or loan] to personal use does not by virtue of that conversion lose his commercial sophistication and so acquire a need for statutory protection." (quotations, emphasis and citations omitted)); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) ("When classifying a loan, courts typically examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature." (quotations and citation omitted)); *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 335 (4th Cir. Jan. 31, 2012) (summary order) (holding that the fact that the state court action

seeking to collect money owed on credit card accounts was initiated against the plaintiff in his personal capacity was "not dispositive because a person can be sued in his or her individual capacity even for business debts.")

Plaintiffs' contention that "[e]ven if this was somehow a commercial debt, at most it was personally guaranteed, and such a guarantee is still covered by the act[,]" (Plaintiffs' Memorandum of Law in Opposition ["Plf. Opp."] at 6), is likewise without merit. *See, e.g. First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 135-36 (5th Cir. 1995) (holding that "attempting to enforce an obligation under a guaranty agreement in connection with a commercial transaction[]" is not collecting a "debt" for purposes of the FDCPA); *Pettingill v. Northern Leasing Sys., Inc.*, No. 1:13-cv-60, 2013 WL 4084754, at * 2 (D. Utah Aug. 13, 2013) (finding that the plaintiff failed to state a claim under the FDCPA where the underlying debt was a business debt guaranteed by the individual plaintiff).

Since plaintiffs have not adduced any evidence on which a jury could reasonably find that the debt at issue was a consumer debt in nature, the branch of their cross motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on their FDCPA claims against the K&R defendants is denied; the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiffs' FDCPA claims against them in their entirety is granted; and defendants are granted judgment dismissing plaintiffs' FDCPA claims against them in their entirety with prejudice.[8]

---

[8] In light of this determination, it is unnecessary to consider the parties' remaining contentions with respect to plaintiffs' FDCPA claims.

3.       Section 1692k(a)(3) of the FDCPA

All parties seek an award of costs and reasonable attorney's fees pursuant to 15 U.S.C. §

1692(k)(a)(3), which provides, in relevant part, that

> "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of– . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

In light of the dismissal of plaintiffs' FDCPA claims against defendants in their entirety

for the reasons set forth above, the branch of plaintiffs' cross motion seeking attorney's fees and

costs pursuant to Section 1692k(a)(3) is denied.

"For [a] defendant to prevail [under Section 1692k(a)(3)], it would have to establish that

[the] plaintiff's 'action' was brought in bad faith and for harassing purposes." *Clayson v. Rubin*

*& Rothman, LLC*, 751 F. Supp. 2d 491, 497 (W.D.N.Y. 2010) (quotations, alterations and

citation omitted).  Moreover, the "[d]efendant must provide evidence of [the] plaintiff's bad faith

(as opposed to counsel's bad faith)."  *Puglisi v. Debt Recovery Sols., LLC*, 822 F. Supp. 2d 218,

233 (E.D.N.Y. 2011) (quotations and citation omitted); *see also Araujo v. PennyMac Loan*

*Servs., LLC*, No. 15-cv-00062, 2015 WL 5664259, at * 6 (E.D.N.Y. Sept. 23, 2015) ("Several

courts have held that a defendant seeking to avail itself of [Section 1692k(a)(3)] must furnish

evidence of bad faith by the plaintiff, not just by his or her counsel. . . . [A]lthough the meritless

claims in the Complaint call into question whether Plaintiff had a good faith basis for bringing

this action, Defendant has not provided any evidence that Plaintiff pursued it for the purpose of

harassment." (citations omitted)).  Absent any evidence that plaintiffs, themselves, commenced

this action in bad faith and for the purpose of harassment, the branch of defendants' motion

seeking costs and attorney's fees pursuant to Section 1692k(a)(3) of the FDCPA is denied.  *See,*

*e.g. Tornheim v. Federal Home Loan Mortg. Corp.*, 988 F. Supp. 279, 288 (S.D.N.Y. 1997),

*aff'd*, 198 F.3d 235 (2d Cir. 1999); *Puglisi*, 822 F. Supp. 2d at 233; *Harrison v. NBD Inc.*, 968 F.

Supp. 837, 849 (E.D.N.Y. 1997).


   C.  Supplemental Jurisdiction

   Although the dismissal of state law claims is not required when the federal claims in an

action are dismissed, *see Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391-92, 118 S. Ct.

2047, 141 L. Ed. 2d 364 (1998); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004),

a federal court may decline to exercise supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367(c).  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S.

Ct. 1862, 1866-1867, 173 L. Ed. 2d 843 (2009) (holding that a district court's decision whether

to exercise supplemental jurisdiction after dismissing every claim over which it had original

jurisdiction is purely discretionary); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d

106, 117 (2d Cir. 2013) ("The exercise of supplemental jurisdiction is within the sound

discretion of the district court.")  The court must "consider and weigh in each case, and at every

stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order

to decide whether to exercise jurisdiction" over any pendent state law claims.  *Carnegie-Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); *accord Kroshnyi v.*

*U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014).  Generally, where all of the

federal claims in an action are dismissed before trial, the balance of factors will favor declining

to exercise supplemental jurisdiction over the remaining state law claims.  *See Cohill*, 484 U.S. at 350; *Kroshnyi*, 771 F.3d at 102 ("A court may decline to exercise supplemental jurisdiction[] . . . if, among other factors . . . [it] has dismissed all claims over which it has original jurisdiction." (quotations and citations omitted)); *Delaney v. Bank of America Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)).

In light of the dismissal of all federal claims in this action before trial, and upon consideration of all relevant factors, *i.e.*, judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over the remaining state law claims in this action. *See, e.g. Boyd v. J.E. Robert Co., Inc.*, 765 F.3d 123, 126 (2d Cir. 2014) ("[A]fter properly granting summary judgment on the FDCPA claims, the District Court had discretion not to exercise supplemental jurisdiction over the state law claims.")  Accordingly, plaintiff's remaining state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[9]  Pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims timely filed in this Court is tolled for a period of **thirty (30) days after the date of this order** unless a longer tolling period is otherwise provided under state law.


III.    CONCLUSION

For the reasons set forth above, the branch of defendants' motion seeking summary

---

[9]  In light of this determination, the branches of defendants' motion seeking dismissal of plaintiffs' state law claims, and of plaintiffs' cross motion seeking leave to amend the complaint to assert additional state law claims against Potenza and to transfer venue of this action, are denied without prejudice.

judgment dismissing plaintiffs' FDCPA claims pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted; defendants are awarded judgment dismissing plaintiffs' FDCPA claims against them in their entirety with prejudice; plaintiffs' state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3); defendants' motion is otherwise denied; and plaintiffs' cross motion is denied in its entirety. The Clerk of the Court shall enter judgment in favor of defendants on plaintiffs' FDCPA claims and close this case.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: November 3, 2016
       Central Islip, New York